IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Emoji Company GmbH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -against- ) | Case Number: 1:20−cv−04911 |
| ) | |
| The Individuals, Corporations, Limited ) | |
| Liability Companies, Partnerships, and ) | The Honorable John Robert Blakey |
| Unincorporated Associations Identified on ) | |
| Schedule A Hereto, et al., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ALLEN VISION'S
MOTION TO DISMISS OR, ALTERNATIVELY, TO MODIFY THE
<u>PRELIMINARY INJUNCTION ORDER</u>**

Defendant Allen Vision respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff Emoji Company GmbH's Complaint pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(5) and 12(b)(6) or, alternatively, to modify the preliminary injunction order dated November 9, 2020 (the "PI Order").

### I. INTRODUCTION

Defendant Allen Vision ("Allen Vision" or "the moving defendant") submits this brief in support of its motion to dismiss or, alternatively, to modify the PI Order. First of all, because Allen Vision does not have minimum contacts with Illinois, this Court lacks personal jurisdiction over Allen Vision. In addition, the service of process on Allen Vision is insufficient. Furthermore, Plaintiff's Complaint against Allen Vision fails to state a claim to relief that is plausible on its face. Therefore, the Court should dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(5) and 12(b)(6). Alternatively, if the Court determines dismissal is not warranted, the Court should modify the PI Order as stated below.

1

## II. PROCEDURAL HISTORY AND BACKGROUND FACTS

Plaintiff Emoji Company GmbH ("Emoji Company" or "Plaintiff") is a Germany company. See Exhibit 1 to the Complaint (attached as **Exhibit B** to Tung Decl.). In this case, Emoji Company sued 274 defendants, all of which are sellers on Amazon.com or other similar E-Commerce platforms, for trademark infringement and counterfeiting (15 U.S.C. § 1114), false designation of origin (15 U.S.C. § 1125(a)), and trademark violation under Illinois State law (815 ILCS § 510/1, et seq.). See **Exhibit B** to Tung Decl.

The lawsuit is based on three federally registered trademarks, all of which are standard characters marks. Sample drawings of the marks on the trademark certificates (see Exhibit 1 to the Complaint) are shown below:

| | |
|---|---|
| emoji | U.S. Trademark Registration No. 4,868,832. |
| Emoji | U.S. Trademark Registration No. 5,202,078 |
| emoji | U.S. Trademark Registration No. 5,415,510 |

Allen Vision is one of the defendants. Allen Vision is an unincorporated business, having its principal place of business in Nantong City, China. See Li Decl. at ¶¶2, 6. Allen Vision sells backdrop products on the Amazon.com to customers all over the world. The backdrops are used by its customers for photographing or decoration purposes. *Id.* at ¶¶4-5. Allen Vision manufactures its backdrop products in China and ships them to Amazon's warehouses. Once a customer orders backdrop products on the Amazon.com, the payment will be sent to Allen

2

Vision's amazon account and Amazon.com will handle the shipment for Allen Vision and Amazon.com charges Allen Vision fees for its warehouse and shipment service. *Id.* at ¶7.

Allen Vision is not registered to do business in Illinois. Allen Vision has no regular and established place of business in Illinois. Allen Vision does not maintain any offices, employees, or telephone listings in Illinois. Allen Vision has no manufacturing facility or distribution facility in Illinois. Allen Vision does not pay taxes or maintain any bank accounts in Illinois. Allen Vision does not participate in any business meetings, seminars, trade shows, or other marketing related activities in Illinois. Allen Vision does not have any employees who visit Illinois for business purposes, and Allen Vision does not send agents in Illinois to solicit business. Allen Vision does not own any real or personal property in Illinois. *Id.* at ¶¶8-15.

As to the complained product in the case, Allen Vision used the following design in one of its backdrop products:



This design was developed by Allen Vision at its office in China. The products were not developed or manufactured in Illinois. All marketing and sales decisions related to the products were made at Allen Vision's office in China. *Id.* at ¶¶20, 22. Allen Vision sold only 13 pieces of the backdrop products with such design to its U.S customers. None of the customers is located in Illinois. The total revenue generated from the sale of the complained products is about $278.86. *Id.* at ¶21. The design of the complained product does not contain any term similar or identical to

"emoji," neither does Allen Vision's products identification and description on Amazon.com contain the term of "emoji." *Id.* at ¶23.

### III. ARGUMENT

**A. Plaintiff's Complaint Should Be Dismissed Under Rule 12(b)(2) Because the Court Lacks Personal Jurisdiction Over Allen Vision**

"[T]he mechanics for asserting personal jurisdiction in federal court are found in Federal Rule of Civil Procedure 4(k)." *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 723 (7th Cir. 2013). In essence, "federal personal jurisdiction is proper whenever the person would be amenable to suit under the laws of the state in which the federal court sits (typically under a state long-arm statute), subject always to the constitutional due process limitations encapsulated in the familiar 'minimum contacts' test." *Id.*

Thus, this district Court can exercise personal jurisdiction if it would be permitted to do so under the Illinois long-arm statute. See Fed. R. Civ. P. 4(k)(1)(A); *uBID. Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). There are two types of personal jurisdiction: general and specific. *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014).

The plaintiff need not include facts alleging personal jurisdiction in the complaint, but "once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

Here, in this case, Plaintiff's complaint fails on its face. It neither pleads nor references a single fact which could lead this Court to assert jurisdiction over Allen Vision.

Nor can Plaintiff replead at this point, unless it comes up with actual evidence of Illinois contacts. Once a Defendant has submitted a declaration, as it has done here, the Plaintiff must go

4

beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F3d 773, 783 (7th Cir. 2003).

As the Declaration of Xiang Li makes clear, Defendant, only sold 13 pieces of the complained backdrop products in the entire U.S. and none of them was sold to an Illinois resident. Li Decl. at ¶21. Indeed, Allen Vision does not have any connections with Illinois (not registered to do business, no office, no employees, and no manufacturer or distribution facility in Illinois). *Id.* at ¶¶8-19. Allen Vision does not maintain a separate website and all sales are conducted through Amazon.com. *Id.* at ¶5. Even considering the U.S. as a whole for the contact purpose, personal jurisdiction should not be found based only on the sales through an interactive website. *Advanced Tactical Ordnance Sys. v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014) ("Having an 'interactive website' (which hardly rules out anything in 2014) should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible. To hold otherwise would offend traditional notions of fair play and substantial justice."). The complete lack of any contacts between Allen Vision and Illinois renders personal jurisdiction under any theory in this Court unsupportable.

Personal jurisdiction can be either "general" or "specific." General jurisdiction is proper only "…in the limited number of fora in which the defendant can said to be 'at home.'" *Id.* It's not clear what Plaintiff's theory is here, but it's doubtful it would claim a China-based unincorporated business is "at home" in Illinois. Specific jurisdiction arises only for a suit arising out of "forum-related activity." *Id.* It must be based on the contacts the Defendant makes with the forum state. For it to attach, Plaintiff must show that Defendant's suit-related conduct creates a "substantial relationship with the forum State." *Id.* at 801. Accordingly, just because Plaintiff's

attorneys are located in this State[1], "does not suffice to authorize jurisdiction." *Id.* Rather, jurisdiction "must arise out of contacts that the 'defendant himself' creates with the forum State. *Id.* at 802 (citations omitted).

Nor should Plaintiff be permitted to impose further expense on Defendant through discovery. Although a court has discretion to permit discovery in certain jurisdiction disputes, "[a]t a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted." *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000). In short, a plaintiff shouldn't be permitted to impose the time and expense of jurisdictional discovery on a defendant just because it filed a complaint with the court.

**B.     The Complaint Against Allen Vision Should Be Dismissed Under Rule 12(b)(5) Because The Service of Process Is Insufficient**

The service of process is not sufficient in this case. Allen Vision has a physical address located in Nantong City, People's Republic of China. Li Decl. at ¶6. China is a signatory to the Hague Convention referenced in Fed. R. Civ. P. Rule 4(f)(1). The Hague Convention requires signatory countries to establish a Central Authority to receive requests for service of documents from other countries and to serve those documents by methods compatible with the internal laws of the receiving state. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698–99 (1988). Service through a country's Central Authority is the principal means of service under the Hague Convention. Here, Allen Vision received the notice of the lawsuit through email, which is not an appropriate way to deliver the service of process on a Chinese resident. *See Luxottica Grp. S.p.A. v. P'ships & Unincorporated Ass'n Identified on Schedule "A"*, 391 F. Supp. 3d 816, 827

---

[1] According to the emoji trademark registrations, attached to Plaintiff's Complaint as **Exhibit 1**, Plaintiff is a Germany company, not an Illinois company.

(N.D. Ill. 2019) (holding that service via email on residents of China was deemed insufficient due to China's objections to Article 10 of Hague Convention service through postal channels).

C. **The Complaint Against Allen Vision Should be Dismissed Under Rule 12(b)(6) Because Plaintiff's Complaint Against Allen Vision Fails to State a Claim to Relief that is Plausible on its Face**

A Rule 12(b)(6) motion to dismiss challenges the sufficiency of a complaint. *Bonnstetter v. City of Chicago*, 811 F.3d 969, 973 (7th Cir. 2016). A complaint must contain enough information, in the form of "a short and plain statement of the claim," to give the defendant "fair notice" of the claim and its basis. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

Notice alone, however, is insufficient to survive a motion to dismiss; a complaint must also contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Adams v. City of Indianapolis*, 742 F.3d 720, 728-29 (7th Cir. 2014). Indeed, "the Supreme Court's decisions in *Twombly* and *Iqbal* ushered in a requirement that civil pleadings demonstrate some merit or plausibility in complaint allegations to protect defendants from having to undergo costly discovery unless a substantial case is brought against them." *United States v. Vaughn*, 722 F.3d 918, 926 (7th Cir. 2013).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. In determining the plausibility of a claim, a court must accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff. *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016). However, a court does not consider "legal conclusions and conclusory allegations merely reciting the elements of the

7

claim," as they "are not entitled to the presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678. The Seventh Circuit has interpreted the "plausibility" standard as requiring "a nonnegligible probability that the claim is valid. *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 629 (7th Cir. 2010).

To prevail on either Plaintiff's trademark claim or unfair competition claim, Plaintiff must demonstrate that Defendant's use of a protectable mark "is likely to cause confusion among consumers." *Phoenix Entm't*, 829 F.3d at 822; *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001). At this stage, Plaintiff must plead allegations that make it plausible that such likelihood of confusion exists. *See Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014) ("Allegations of consumer confusion in a trademark suit, just like any other allegations in any other suit, cannot save a claim if they are implausible"); *Top Tobacco v. Fantasia Distribution Inc.*, 101 F. Supp. 3d 783, 790 (N.D. Ill. 2015).

In determining whether the use of the mark is likely to cause confusion among consumers a court considers the following seven factors: "(1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) whether actual confusion exists, and (7) whether the defendant intended to 'palm off' his product as that of the plaintiff." *CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 673-74 (7th Cir. 2001). No one factor is dispositive and the court balances the seven factors. *Id.*; *Packman*, 267 F.3d at 643. However, the similarity of the marks factor, the actual confusion factor, and the intent factor are particularly important. *CAE, Inc.*, 267 F.3d at 678; *Packman*, 267 F.3d at 643.

8

1.  Similarity Between Marks

With respect to the marks' similarity, the test is "whether the viewer of an accused mark would be likely to associate the product or service with which it is connected with the source of products or services with which an earlier mark is connected." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015).

In the instant action, Plaintiff failed to include images of Plaintiff's marks and the moving defendant's marks in the complaint. As shown above, Plaintiff's marks alleged in the complaint and the moving defendant's marks are not similar. Plaintiff's marks word "EMOJI," but the moving defendant sold its backdrop products under the mark "Allenjoy." See **Exhibit A** to Tung Decl. The differences in the letter formation, letter type, color, and background of the parties' marks are significant. A jury viewing these marks could not plausibly find that the marks are similar and not likely to make a consumer associate the product offered for sale by the moving defendant with the source of the Plaintiff's marks. Neither do the smiling design patterns on the complained backdrop products have any similarity with the standard character marks "EMOJI" because one is in the form of patterns and the other is a five-letter work mark. See Li Decl. at ¶¶22-23. And the design patterns were not used as trademarks in the backdrop and they were simply part of the design. Therefore, this factor weighed in favor of the moving defendant.

2.  Similarity Between Products or Services

In assessing the similarity between the parties' products or services factor, the proper inquiry is "whether the public is likely to attribute the products and services to a single source." *CAE, Inc.*, 267 F.3d at 679.

In the case at bar, Plaintiff failed to allege in the complaint that Plaintiff's products or services and the moving defendant's products or services are similar. Plaintiff's complaint even

9

failed to state what products or services Plaintiff manufactures, advertises or sells. The complaint also failed to allege what products or services the moving defendant offered for sale. The backdrops developed by the moving defendant could be the only product presumably complained of by Plaintiff. In the complaint, Plaintiff failed to allege Plaintiff has the similar backdrop products, while the moving defendant sold the backdrop products with the product name of "Allenjoy Birthday Backdrop." See **Exhibit A** to Tung Decl. As such, the public is not likely to attribute the moving defendant's backdrop products and Plaintiff's products, if any, to a single source and this factor therefore weighed in the moving defendant's favor.

      3.      <u>Area and Manner of Concurrent Use</u>

With respect to the area and manner of concurrent use, the Court asks "whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties." *KJ Korea, Inc. v. Health Korea, Inc.*, 66 F. Supp. 3d 1005 (N.D. Ill. 2014). To answer this question, the Court considers the "relative geographical distribution areas, evidence of direct competition between the products, whether products are sold to consumers in the same type of store or similar section of a particular store, and whether the product is sold through the same marketing channels." *Top Tobacco*, 101 F. Supp. 3d at 790.

Here, Plaintiff's complaint failed to identify which products of the moving defendant are infringing products. As stated above, the backdrops developed by the moving defendant could be the only product presumably complained of by Plaintiff. Nothing in the complaint alleged that a relationship in use, promotion, distribution, or sales between the goods or services of Plaintiff and the moving defendant exists. The moving defendant sold its backdrop products through Amazon's E-Commerce platform, but Plaintiff failed to allege that Plaintiff sold any backdrop products in Amazon. Nothing in the complaint alleged that Plaintiff's products have concurrent

relative geographical distribution area with the moving defendant's products. Plaintiff failed to provide any evidence of direct competition between Plaintiff's products and the moving defendant's products. In the complaint, Plaintiff alleged that Defendants sold products through their Internet stores, but Plaintiff failed to allege that Plaintiff sold its products in the same type of store or similar section of a particular store. Plaintiff also failed to plead in sufficient content that Plaintiff promotes, distributes or sells any backdrop products in any type of store or any section of a particular store, or sells through any marketing channels. As such, this factor shall be in the moving defendant's favor.

    4.    <u>Degree of Care By Consumers</u>

In determining the degree of care likely to be exercised by consumers the Court must consider the potential consumers of both parties. *CAE, Inc.*, 267 F.3d at 682.

In the case at bar, Plaintiff's complaint failed to address this factor at all. The Court should therefore find that this factor does not support a likelihood of confusion finding.

    5.    <u>Strength of Mark</u>

For the strength of the plaintiff's mark, "courts examine the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular source." *KJ Korea*, 66 F. Supp. 3d at 1016.

When the plaintiff uses a mark which is an unpronounceable group of letters some factors that the Seventh Circuit considers in determining the strength of the mark include: 1) how long the mark was used, 2) the amount of sales of products or services connected to the mark, 3) the amount of money spent on advertising the mark, 4) the use or non-use of the letter combination by the plaintiff's subsidiaries or divisions, and 5) the registration by the plaintiff of other trademarks that contain the letter grouping. *CAE, Inc.*, 267 F.3d at 685.

In the instant action, Plaintiff failed to allege at least four of the above-mentioned five factors the Seventh Circuit considers in determining the strength of the mark. First of all, Plaintiff's complaint failed to plead in sufficient manner how long Plaintiff's marks were used. Secondly, Plaintiff's complaint failed to plead any factual allegations regarding the amount of sales of products or services connected to Plaintiff's marks. Thirdly, in the complaint, Plaintiff failed to plead in sufficient how much Plaintiff spent on advertising its marks. Fourthly, Plaintiff's complaint failed to plead any factual allegations regarding the use or non-use of the letter combination by Plaintiff's subsidiaries or divisions.

Failure to plead sufficiently with respect to the strength of Plaintiff's marks does not plausibly give rise to the inference that the fifth factor weighs in favor of likelihood of confusion. As such, this strength of mark factor shall be in favor of the moving defendant.

6. <u>Actual Confusion</u>

Evidence of actual confusion is entitled to substantial weight in the likelihood of confusion analysis. *CAE, Inc.*, 267 F.3d at 686. The Seventh Circuit has found in some cases that a showing of only a few instances of actual confusion is de minimis and is insufficient to tilt the actual confusion factor in favor of the Plaintiff. *Packman*, 267 F.3d at 645.

In the case at bar, Plaintiff's complaint failed to plead any facts from which the Court can reasonably infer actual confusion. Plaintiff failed to provide any evidence of actual confusion in the complaint. As demonstrated above, Plaintiff's marks and the moving defendant's marks are substantially different. The moving defendant sold its backdrop products through Amazon with the product name of "Allenjoy Birthday Backdrop," while Plaintiff failed to allege Plaintiff sold any similar backdrop products in Amazon. Assuming arguendo Plaintiff did sold its backdrop products with the mark name of "EMOJI" even though Plaintiff has failed to allege, it would not

cause actual confusion to the general public as it is easy to distinguish the moving defendant's backdrop products from Plaintiff's backdrop products if any, especially with the parties' name in the order of products. Since Plaintiff failed to allege any factual evidence of actual confusion, this factor shall be in the moving defendant's favor.

7. Intent to Confuse Consumers

This factor primarily looks to whether "the defendants are attempting to 'pass off' their products as having come from the plaintiff." *Packman*, 267 F.3d at 644.

Regarding this factor, Plaintiff alleged in its complaint that Defendants have knowledge of Plaintiff's rights in its Trademarks and are willfully infringing and intentionally using Plaintiff's Trademarks on counterfeit products. Defendants' willful, intentional, and unauthorized use of Plaintiff's Trademarks are likely to cause and are causing confusion, mistake, and deception as to the origin and quality of the counterfeit products among the general public. Complaint at ¶ 28. These allegations address the moving defendant's intent, but they "do not weigh particularly heavily in favor of or against likelihood of confusion" because they are conclusory and not supported by factual allegations from which the Court can reasonably infer the alleged intent and knowledge. *See Top Tobacco*, 101 F. Supp. 3d at 791 (addressing unsupported allegations that the defendant was intentionally using its mark "to profit off of the goodwill and consumer recognition of" the plaintiff's trademark and "deliberately and willfully used its mark … to pass its tobacco product off as those of" the plaintiff). In addition, as stated above, Plaintiff has not alleged in its complaint that Plaintiff sold any backdrop products in the market, and the moving defendant has thus no intent to confuse consumers. Furthermore, the evidence of using the product name of "Allenjoy Birthday Backdrop" in the sale of its backdrop products by the moving defendant also supports the contention that the moving defendant has no

intent to confuse consumers. For the foregoing reasons, this intent to confuse consumers factor shall be in favor of the moving defendant.

In sum, Plaintiff has not alleged sufficient facts pertaining to any of the seven likelihood of confusion factors. By doing so, Plaintiff has not raised the possibility of likelihood of confusion "above a speculative level," *Horist v. Sudler & Co.*, 941 F.3d 274, 278 (7th Cir. 2019), especially given the fact-intensive nature of weighing the different factors depending on the facts of the case, *see Packman*, 267 F.3d at 643; *Top Tobacco*, 101 F. Supp. 3d at 790. Courts from this District have similarly found that complaints that plead sufficient facts pertaining to four of the seven factors adequately allege likelihood of confusion. *See, e.g., Mon Aimee Chocolat*, 2015 U.S. Dist. LEXIS 143549, 2015 WL 6407758, at *5-6 (finding likelihood of confusion adequately pleaded where the complaint alleged sufficient facts pertaining to the first, second, third, and fifth factors); *Top Tobacco*, 101 F. Supp. 3d at 789, 792 (same). Since Plaintiff has not alleged sufficient facts pertaining to any of the above seven factors with respect to the likelihood of confusion, the Court therefore should grant the moving defendant's motion to dismiss based on the unlikelihood of confusion argument.

**D.** **In The Event Plaintiff's Complaint Against Allen Vision Is Not Dismissed, The Preliminary Injunction Order Should Be Modified**

On Nov. 9, 2020, this Court issued the PI Order against all defendants. See **Exhibit C** to Tung Decl. In the PI Order, among other things, the Court directed Amazon to locate all accounts connected to Defendants and to "[r]estrain and enjoin any such accounts or funds that are China or Hong Kong-based from transferring or disposing of any money or other of Defendants' assets until further ordered by this Court." PI Order at ¶7. This Court also orders that service of process on Defendants may be accomplished through email including a link to the website where the documents are located pursuant to Fed. R. Civ. P. 4(f)(3). See PI Order at ¶8.

14

To evaluate a preliminary injunction, one of the factors the Court will consider is the irreparable harm the nonmoving party will suffer should not outweigh the irreparable harm the moving party will suffer without preliminary injunctive relief. *See Rust Environment & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1213 (7th Cir. 1997).

In this case, the total revenue generated from the sale of the complained products in the United States is about $278.86. See Li Decl. at ¶21. To freeze Allen Vision's entire amazon account for the $278.86 sale is disproportional to the alleged irreparable harm Plaintiff will suffer. Allen Vision's whole business will quickly dismantle if the sale proceeds stops flowing back from its Amazon account while the case is pending. *Id.* at ¶24. The injunction against any alleged further infringement (PI Order at ¶1) should be sufficient to protect Plaintiff's interests. If the funds in the Amazon account has to be frozen, Allen Vision requests the Court set a limit on the amount (for example, $2,000) considering the scale of the complained sale.

The service of process section in the PI Order also requires modification. See PI Order at ¶8. The authority to order alternative service comes from Rule 4(f)(3). The rule permits service "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). To decide whether ¶ 8 of the PI Order was proper, the Court must therefore ask whether the Hague Service Convention prohibits service by email or posting on a web page.

This District Court has held that service via email on residents of China was deemed insufficient due to China's objections to Article 10 of Hague Convention service through postal channels. *Luxottica Grp. S.p.A. v. P'ships & Unincorporated Ass'n Identified on Schedule "A"*, 391 F. Supp. 3d 816, 827 (N.D. Ill. 2019). Therefore, service of process through email is inappropriate and the PI Order should be modified accordingly.

*/s/ Kevin K. Tung*, attorney for Allen Vision